UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CARISSA P.,

                                        Plaintiff,

                    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                                        Defendant.

_____

DECISION AND ORDER

22-CV-6390DGL

 

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security

("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the

Commissioner's final determination.

On April 28, 2020, plaintiff filed applications for a period of disability and disability

insurance benefits, and for supplemental security income, alleging an inability to work since

January 1, 2009 – later amended to February 15, 2017. (Dkt. #6 at 15). Her applications were

initially denied. Plaintiff requested a hearing, which was held on March 10, 2022 via

teleconference before administrative law judge ("ALJ") Bruce S. Fein. The ALJ issued a decision

on April 14, 2022, finding plaintiff not disabled. (Dkt. #6 at 15-28). That decision became the final

decision of the Commissioner when the Appeals Council denied review on August 2, 2022. (Dkt.

#6 at 1-3). Plaintiff now appeals.

The plaintiff has moved pursuant to Fed. R. Civ. Proc. 12(c) for judgment vacating the

ALJ's decision and remanding the matter for further proceedings (Dkt. #9), and the Commissioner

has cross moved for judgment dismissing the complaint (Dkt. #10). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Familiarity with the five-step evaluation process for determining Social Security disability claims is presumed. *See* 20 CFR §404.1520. The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

## I.    The ALJ's Decision

Plaintiff was 29 years old on the amended alleged onset date, with a high school education and past relevant work as a short order cook and bartender helper. (Dkt. #6 at 26). Her medical records reflect diagnoses and/or treatment for seizure disorder (status post temporal lobectomy), hearing loss, bipolar disorder, post-traumatic stress disorder, and borderline personality disorder. (Dkt. #6 at 18).

In applying the special technique for mental impairments, the ALJ found that plaintiff has a moderate limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentration, persistence, and pace, and a mild limitation in adapting or managing herself. (Dkt. #6 at 20-21). The ALJ thus concluded that plaintiff's mental limitations were not, by themselves, disabling.

After reviewing the evidence of record, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform medium work, except that she cannot climb ladders, ropes or scaffolds. She must avoid concentrated exposure to unprotected heights,

hazardous machinery, operational control of moving machinery, and noises at loud or higher levels, as defined by the Dictionary of Occupational Titles ("DOT"). She is limited to simple, routine, repetitive tasks involving no more than occasional interaction with coworkers, supervisors, and the public. She can work in a low-stress job, defined as involving only occasional decision making, changes in the workplace setting, and use of judgment on the job. (Dkt. #6 at 21-22).

When presented with this RFC as a hypothetical at the hearing, vocational expert Renee Jubrey testified that such an individual could not perform plaintiff's past relevant work as a short order cook or bartender helper, but would be able to perform the representative unskilled, medium exertion positions of laboratory equipment cleaner, cook helper, and kitchen helper. (Dkt. #6 at 27). The ALJ accordingly found plaintiff not disabled.

## II.    The ALJ's Assessment of Medical Opinion Evidence

Plaintiff initially argues that in assessing the medical opinions of record with respect to plaintiff's mental RFC, the ALJ failed to properly weigh the supportability and consistency factors, and thus improperly discounted opinions by treating sources, in favor of those from consulting sources and non-examining agency reviewers.

Pursuant to the regulations which apply to plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§404.1520c(a), 416.920c(a). Rather, the Commissioner will consider all medical opinions in light of five factors: (1) supportability; (2) consistency with other evidence of record; (3) the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the nature, purpose and extent of the treating or

examining relationship; (4) area of specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at §§ 404.1520c(c), 416.920c(c).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds each of the medical opinions of record, and must specifically explain how the supportability and consistency factors were weighed. *See Salleh D. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 427 at *9-*11 (W.D.N.Y. 2022). "Although an ALJ may afford various weights to portions of a medical source opinion, the ALJ is still required to provide reasoning to support [his or] her various weight determinations," in order to permit meaningful judicial review. *Yasmine P. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 154176 at *10 (W.D.N.Y. 2022).

### A.      Plaintiff's Mental RFC

With respect to plaintiff's mental limitations, the record contained four opinions. Consulting psychologist Dr. Hildy Dinkins examined plaintiff on September 4, 2020, and noted normal mental activity, proper orientation, intact memory, intact concentration, varied abstract reasoning, and adequate judgment. Diagnostic impressions included personality disorder, somatic symptom disorder, generalized anxiety disorder, and self-reported post-traumatic stress disorder. Dr. Dinkins opined that plaintiff was in need of psychotropic medication and counseling, but found that plaintiff was able to understand, remember, and apply information, and sustain attention and concentration, although her personal interactions were not wholly age-appropriate. (Dkt. #6 at 1036-40).

The ALJ found Dr. Dinkins's opinion persuasive, noting that it was consistent with the objective findings made by plaintiff's treating provider during a treatment visit around the same time, and with the longitudinal record. (Dkt. #6 at 25, 1047-48).

The ALJ also relied on the opinions of non-examining agency physicians Dr. Ryan Hammond and Dr. Stephen Hennessey, who reviewed the bulk of the record and opined mild to moderate limitations in each of the four functional areas: understanding, remembering, and applying information, interacting with others, concentration, persistence and pace, and adapting or managing oneself. Citing their alleged consistency, the ALJ found their opinions generally persuasive. (Dkt. #6 at 25, 66-69, 115-16, 103-104, 124-26).

Plaintiff's treating therapist, psychiatric nurse practitioner Stacey Miller, completed an assessment on February 2, 2022, based on a 17-month treatment history. Ms. Miller indicated that plaintiff's symptoms had "improved" with medication, but that plaintiff "continues to have some mood instability and anxiety." (Dkt. #6 at 1212). Ms. Miller assessed marked or serious limitations (defined as the inability to function up to 20% of the time) in several functions concerning the ability to understand, remember, and apply information, no more than mild problems in interacting with others, no more than moderate problems in concentration, persistence or pace, and no more than moderate problems in adapting or managing herself. She further indicated that plaintiff's symptoms would cause her to miss about 2 days of work per month, and that she would be tardy to work about 2 days per month. (Dkt. #6 at 1212-17).

To the extent that it reflected greater-than-moderate limitations in the domain of understanding, remembering, and applying information, the ALJ found Miller's opinion "less persuasive," given its inconsistency with the opinions of Dr. Dinkins, Dr. Hammond, and Dr. Hennessey, as well as with Ms. Miller's treatment notes (which indicated that, by February 2022 when the opinion was rendered, plaintiff had been consistently reporting that her mood was stable, that she was satisfied with her current medications, and that her anxiety was improved), and plaintiff's conservative course of treatment overall. (Dkt. #6 at 25, 1102-05).

I find no error in the ALJ's assessment of the medical opinions of record with respect to plaintiff's mental RFC. Initially, the ALJ properly noted and considered, inter alia, each medical source's status, relationship to plaintiff (treating, examining, or reviewing source), the basis for their opinion, and the consistency of that opinion with other evidence of record. As the ALJ noted, Dr. Dinkins's opinion was supported by, and consistent with, her own objective findings, as well as with many of the objective findings contained in plaintiff's treatment notes and intake records, both contemporaneous and longitudinal, and the opinions of the agency reviewers.

In declining to fully credit Ms. Miller's opinion, the ALJ properly took note of plaintiff's history of conservative medication management, and Ms. Miller's inconsistent narrative descriptions of plaintiff's RFC, which documented improvement in her symptoms, albeit with some persistent mood instability and anxiety. To the extent that Ms. Miller indicated specific problems in understanding work procedures, identifying and solving problems, and sequencing multi-step activities, the ALJ accounted for limitations in these areas by limiting plaintiff to simple, routine, repetitive tasks, in a low stress job with no more than occasional decision making, changes in the work setting, or need to exercise judgment. (Dkt. #6 at 21-22). I find no error therein.

### B.    Plaintiff's Physical RFC

Plaintiff also alleges that the ALJ did not sufficiently account for plaintiff's physical limitations, by improperly weighing the opinion of plaintiff's treating epilepsy specialist, Dr. Thomas Wychowski. On March 10, 2022, based on a non-consecutive five-year course of treatment, Dr. Wychowski noted that plaintiff experiences non-convulsive seizures without warning (with the most recent having been in spring 2020), which require a rest period of 3-4 days thereafter. Dr. Wychowski described plaintiff's seizures as "well controlled" with medication in

the years since her 2013 lobectomy surgery, but also warned that plaintiff "has significantly worsening memory since [her] temporal lobe resection." (Dkt. #6 at 1881).

Dr. Wychowski indicated that plaintiff was capable only of low stress work, and that physical exertion could precipitate seizure activity. Accordingly, among other limitations, he specified that plaintiff can stand or walk for less than 2 hours in an 8-hour workday, can no more than occasionally lift 11-50 pounds, can never lift over 50 pounds, and can no more than occasionally squat, crawl, or climb. Side effects of her seizure medication were described as "lethargy" and "lack of alertness," and plaintiff was, among other things, moderately limited with respect to unprotected heights and moving machinery, and mildly limited in driving a motor vehicle. (Dkt. #6 at 1884).

The ALJ found Dr. Wychowski's opinion only "somewhat persuasive," concluding that the exertional limitations he had described were inconsistent with plaintiff's "running." (Dkt. #6 at 26).

The ALJ's rationale for rejecting the exertional and postural limitations indicated by Dr. Wychowski is insufficient, and failed to give due consideration to the supportability and consistency factors. Initially, the exhibit cited by the ALJ as proof of plaintiff's engagement in running (Exh. 7F, Dkt. #6 at 1036-40), makes no mention of running whatsoever. The Commissioner attempts to support the ALJ's reasoning by pointing to a statement on a mental health care intake form, copied-and-pasted in plaintiff's subsequent mental health treatment records, that she "likes to read, watch TV, spend time with her kids, run" (a statement which appeared, coincidentally, alongside mentions of plaintiff's having been forced to quit college, and later stop working, because of frequent seizure activity). (Dkt. #6 at 1081, repeated at 1100, 1108,

1116, 1123, etc.). However, the Court cannot entertain this *post hoc* argument, which relies on evidence that the ALJ did not identify, or mention having considered.

Indeed, even assuming *arguendo* that the record supported a finding that plaintiff was able to "run" for some unknown duration or frequency, plaintiff's mere ability to do so does not contradict the exertional and postural limitations Dr. Wychowski assessed to prevent the exacerbation of plaintiff's seizure disorder, let alone support the ALJ's layperson conclusion that it equates to the ability to perform medium work, which requires frequent lifting of up to 50 pounds, and standing/walking for at least 6 hours in an 8-hour workday.

Where an ALJ concludes that a claimant's activities of daily living are inconsistent with a medical opinion, the ALJ is required to explain how those activities exceed the limitations described in the opinion. Conclusory statements of inconsistency, or the improper substitution of the ALJ's layperson opinion for that of a medical source, are insufficient and improper. *See McCall v. Colvin*, 2017 U.S. Dist. LEXIS 22250 at *42 (W.D.N.Y. 2017); *Taylor v. Astrue*, 2009 U.S. Dist. LEXIS 66671 at *14-*15 (W.D.N.Y. 2009). *See also Rodriguez v. Saul*, 2021 U.S. Dist. LEXIS 102330 at *24 (W.D. Tex. 2021)(ALJ committed reversible error in concluding that the ability to run 3-4 times per week justified the imposition of an RFC for medium work, because that conclusion was based on his own layperson opinion, "unaccompanied by any medical opinion that [running 3-4 times per week] related to an ability to perform the exertional qualifications of medium work").

Plaintiff's epilepsy was found by the ALJ to be a severe impairment, and Dr. Wychowski was the only treating or examining physician who rendered an opinion discussing its impact on plaintiff's RFC. Because that opinion is significantly more restrictive than the RFC determined by

the ALJ, the ALJ's error in failing to properly consider it, or to provide sufficient reasons for rejecting it, cannot be said to be harmless. Accordingly, remand is necessary.

## CONCLUSION

For the foregoing reasons, I find that the decision-appealed-from was not supported by substantial evidence of record, and was the product of legal error. Plaintiff's motion to vacate the ALJ's decision and remand the matter for further proceedings (Dkt. #9) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #10) is denied, and the matter is remanded for further proceedings.

On remand, the ALJ is instructed to reconsider the evidence of record in its entirety, with particular attention to medical opinions and other evidence concerning plaintiff's exertional RFC (including the opinion of Dr. Wychowski), to hold additional proceedings or gather such additional evidence as is deemed necessary and appropriate to supplement the record, and to render an entirely new decision.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        October 12, 2023.